## MOORE & a. *v.* CHESLEY.

If several mutually agree to pay money to be expended for an object of common benefit or interest to the parties, the consideration of the promise of each is the promise of the others; and if one fail to perform, the others must join in an action on the contract. And although, by its terms, the money was to be paid to certain of their number, for the promotion of the common object, these cannot maintain such action.

If a number of persons, associated together for the transaction of business, appoint for their convenience a clerk, who makes a memorandum of the proceedings, these proceedings may be proved without adducing the record or the clerk, by the testimony of any competent witness.

ASSUMPSIT. The first count alleged that on the 25th day of January, 1842, certain persons associated together for the purpose of building a meeting-house at Epping, and agreed together that each subscriber should take the number of shares set against his name, at the rate of $25 a share, and pay for the same, to such persons as should be appointed by the subscribers as a building committee, to be appropriated by them for that object during the present year; that the defendant subscribed for one share; that the subscribers met on the 16th day of March, 1842, at Epping, and appointed the plaintiffs a building committee, who there, and on the same day, contracted with one Ordway to erect and finish the structure for the sum of $1488, and made an assessment of twenty-five dollars on each share so subscribed for, of which the defendant had notice; that in consideration that the plaintiffs would make that contract with Ordway which they aver they did make, thereby promising to pay him $1488 for building and finishing the meeting-house, the defendant then and there promised to pay the plaintiffs twenty-five dollars, yet, well knowing the premises, and though often requested, &c.

The second count alleged that the persons therein

named, on the 25th day of January, 1842, agreed with
each other, for the purpose of building a meeting-house in
Epping; that each subscriber to such agreement should
take the number of shares he should subscribe for, at the
rate of twenty-five dollars each; and the subscribers, in
consideration thereof, promised to pay it to the building
committee who should be appointed by the subscribers, to
be by them appropriated to the building of such meeting-
house, during the year 1842; that the plaintiffs were
appointed such committee at a meeting of the subscribers
at Epping, on the 16th day of March, 1842, at which the
defendant was present, and were authorized to collect the
sums subscribed at such times as they should see fit; that
on that day the committee accepted the proposals of Ord-
way to build the house according to a plan which was sub-
mitted, for the price of $1488, which the plaintiff agreed
to pay; that Ordway erected and finished the building,
and the plaintiffs made assessments of the sums to be
paid at the times named in the count, of which the defend-
ant had due notice, and then and there became liable, and
in consideration thereof promised to pay the plaintiffs
those sums, on demand; that on the 28th day of Novem-
ber, 1842, they demanded the sum of twenty-five dollars,
which the defendant refused to pay, &c.

The third count was for money laid out and expended
for the defendant's use.

At the trial upon the general issue, the plaintiffs pro-
duced a paper of the following tenor:

"NEW MEETING HOUSE.

At twenty-five dollars a share, we, the subscribers, agree
to take the number of shares attached to our respective
names, and to pay for the same on demand to the building
committee to be appointed by the subscribers; the money,
when raised on the several shares, to be appropriated by
said committee in building and finishing a Congregational

meeting-house; said meeting-house to be erected the present year, and located near Epping Corner.

Epping, February, 1842. "

This paper was subscribed by thirty-four persons; and against the name of each, under a column headed, "No. shares," was set a figure, the sum of all of which was fifty-four, denoting the number of shares. The name of the defendant was upon the paper, and in the column of figures, the figure one, and between his name and that column, the words, "one pew."

As a witness, they offered James M. Pike, one of the subscribers, he having executed and delivered to the plaintiffs a release of all claims he might have against them, on account of anything to be recovered in this suit, and they having executed and delivered to him a release of all claims which they might have against him by reason of this suit. The defendant objected to his admission, on the ground of interest; but the court overruled the objection, and he testified that he saw the defendant sign his name to the paper, and write the words and figure against it; that the subscribers had several meetings at his house, some of which the defendant attended; that a chairman and clerk were chosen, and the business transacted by votes, but whether the votes were recorded by the clerk or not, he did not know; but he saw the clerk sitting at the table and writing at the times of the meetings. At one of these meetings the plaintiffs were appointed a building committee, the defendant being present and not objecting.

The clerk's record of that meeting or of that vote were not produced, nor any reason offered for not producing them; and the defendant objected to this evidence of the appointment of the committee, but the court admitted it.

Pike also testified that at some one of the meetings at which the defendant was present, Asa W. Ordway submitted proposals for building the meeting-house, which

were accepted by the committee, and some contract in writing was entered into between him and them, for building the house; but whether the committee contracted in their own names and behalf, or otherwise, the defendant did not know.

There was also evidence that the meeting-house was built by Ordway, and finished about the first of December, 1842; that the plaintiffs, on the first of May, 1842, demanded of the defendant ten dollars, the amount first assessed, and, on his refusal to pay, demanded twenty-five dollars, the whole amount of the subscription, which the defendant refused to pay, alleging that he was about leaving town; and that he did soon afterwards go out of town.

Upon this evidence the defendant moved a nonsuit; that there was no sufficient evidence to support either count, and that there was a variance between the contract declared on and that which the evidence tended to prove; which motion was denied by the court, and the cause was submitted to the jury, the court instructing them that if they believed, upon the evidence, that the defendant subscribed the paper produced, that the plaintiffs were appointed by the subscribers a building committee, and procured a meeting-house to be built near Epping Corner, in the year 1842, they might find for the plaintiffs under the first count for the whole amount of the subscription, although it did not appear that the plaintiffs contracted for building the house in their own name, or on their own account or responsibility, and without showing that they had paid or expended any thing in building the same, or that they had reserved for, or offered to the defendant, one pew in the meeting-house; that the words, "one pew," written by the defendant against his name upon the subscription paper, had not the effect of qualifying his contract to take one share at $25, and might be rejected, and the subscription considered an unconditional subscription

for one share, and might be given in evidence under, and sustain the first count in the declaration, or all the material parts of it.

The jury found a verdict in favor of the plaintiffs for $25. The defendant, having excepted to the rulings, moved to set the verdict aside, by reason of the supposed error therein, and by reason of the supposed erroneous instructions; and the questions of law arising upon the motion were transferred to this court.

*Stickney* and *Christie*, for the defendant. The testimony of Pike was not the proper evidence of the appointment of the plaintiffs as building committee, since the subscribers had a clerk, whose duty it was to record the acts, and whose records were therefore the higher evidence of them. Pike was not qualified by the releases which were made.

The evidence did not support the declaration. There was no evidence that the consideration of the promise was the plaintiff's promise to pay Ordway.

The second count is bad, because it does not allege that the defendant signed the subscription paper.

No action could be maintained by the plaintiffs on the contract. If any action can be maintained, it must be in behalf of the other subscribers.

The second count is clearly bad, and the verdict is general.

*Bell,* for the plaintiffs. If the title is only defectively set out, the defect is aided by the verdict. 16 Pick. 128; 6 Pick. 409.

The committee were appointed by parol, and parol evidence of that fact was therefore sufficient, and it does not appear that the clerk kept a record.

The party proves a sufficient consideration. The promise of the associates is a sufficient consideration for the

promise of each one of them. The second count is good on this ground.

The contract, with the choice of the committee, made these the proper parties to sue. *Burnham* v. *State*, 8 N. H. Rep. 182. One who acts as agent may sue in his own name.

GILCHRIST, J. This action is brought to enforce a contract, made, as it is said, by the defendant, to pay twenty-five dollars towards the building of a meeting-house, in which he would, by the terms of the contract, be entitled to one share, or one fifty-fourth part, such being the number of shares subscribed by the thirty-four who became parties to the enterprise.

It becomes necessary to inquire, who were the parties to the contract? Were they or others entitled, upon a breach of it, to sue for consequential damages? and what was the consideration upon which the promise of the defendant was founded?

The contract is in writing, and is an agreement among those who signed it, to take a definite number of shares in the proposed building, and to pay, at the rate of twenty-five dollars a share, to a committee to be appointed, to defray the expenses of the undertaking. This defendant became a party to the contract by subscribing for one share. It is said, indeed, that by inserting the words, "one pew," between his name and the figure denoting the number of shares, he in some way limited or qualified the undertaking with which, but for those words, the writing would seem to have charged him, to take and pay for one share. But there is some difficulty attending such a supposition, because it is not apparent in what way those words qualify the meaning of the other words and figures; whether they mean that he would take one pew in addition to the share, or whether he intended to make the taking of a share to depend upon the condition of its

Moore v. Chesley.

entitling him to a pew in the house, or upon the condition that it should cost no more than a pew should cost; and unless it can be pointed out how the words, by their plain significance, vary or qualify the indubitable force of the contract as it would stand without them, it would be hardly reasonable to insist that they impaired its force and meaning at all. By writing his name and the figure in the column beneath the word, "No. shares," it must be presumed that he intended to assume the liability obviously pointed out by the instrument. The additional words must be rejected as surplusage, unless they can be shown to have a meaning.

Rejecting these words then, the paper appears to be the evidence of a contract between the several parties subscribing it, that each should pay the sum set against his name. Each contracts and agrees with all the others, and upon breach of his undertaking, becomes liable in an action at the suit of the others for damages. It was so held in *George* v. *Harris*, 4 N. H. Rep. 533.

But it is said, perhaps upon the authority of cases cited there, that although the agreement was made between all the subscribers together, yet any one or more of them, having advanced money for the purposes contemplated in the agreement, might sue a delinquent party for his just share. Such would, perhaps, be the case, but it does not appear by the evidence that the money had been so advanced. *Bryant* v. *Goodnow*, 5 Pick. 228; *Cong. Soc.* v. *Perry*, 6 N. H. Rep. 160.

Neither can these parties maintain the action upon the ground that the defendant, in common with others, promised to pay the money to such as should be appointed the building committee; the cases in which others than the parties to the contract are authorized to sue, being those only in which the contract is made for the express benefit of such third parties. 1 Chit. Pl. 4, and notes, (10th Am. ed.)

Such are the parties entitled to sue upon the contract. The consideration by which each is bound is the promise of the others to contribute to the common object. The case of *George* v. *Harris* sufficiently establishes this; and it is, moreover, illustrated by numerous cases, in which persons, uniting for a common object, not immoral or otherwise obnoxious, as, for instance, the release of a debtor from the several claims of those who so unite for his relief, each has been held, in consideration of the undertaking of the others, to a substantial and *bonâ fide* compliance with the terms of their mutual agreement. *Cockshott* v. *Bennett,* 2 T. R. 763.

But a different consideration is set up in the declaration, and it is a well settled rule that the consideration of a promise must be proved as laid in the declaration. *Knox* v. *Martin,* 8 N. H. Rep. 155. For these two causes the verdict must be set aside.

It would seem that Pike was, by the releases which were exchanged, qualified to testify in the case. He can gain nothing by what the plaintiffs may recover, nor can they be entitled, in the event of their failing in the action, to call upon him for indemnity, however the fact may have previously been.

Neither does the fact that a clerk kept a memorandum of the proceedings of the meetings which the subscribers held, render it necessary for them to prove those proceedings by that memorandum. It is in no legal sense a record, and would serve no other purpose than as something for the clerk to refer to in aid of his memory, or to supply its deficiencies. The witness could remember without such aid, and it was perfectly competent for the plaintiffs to prove the facts by that evidence.

*New trial granted.*